708 S.E.2d 799

**Margaret M. REISS, Respondent,**

v.

**Paul W. REISS and Pamela Buck a/k/a Pamela Evans, Defendants,**

**of whom Paul W. Reiss is the Appellant.**

**No. 4797.**

Court of Appeals of South Carolina.

Heard Nov. 3, 2010.

Decided Feb. 23, 2011.

Anthony P. LaMantia, III, of Charleston, for Appellant.

Stephanie P. McDonald, of Charleston, for Respondent.

LOCKEMY, J.

In this domestic action, Paul W. Reiss (Husband) appeals the family court's final decree of divorce alleging error in the family court's (1) valuation of marital property, (2) equitable apportionment, (3) award of alimony to Margaret M. Reiss (Wife), (4) calculation of his support arrearage, and (5) award of attorney's fees in favor of Wife. We affirm.

## FACTS

Husband and Wife were married in June 1990, and no children were born as a result of the marriage. During the marriage, the parties maintained a marital home on Kiawah Island (Kiawah Property). Husband was employed as a commercial fisherman and participated in the wreckfish fishery off the coast of South Carolina. In 1991, the parties formed Pamar Holdings to administer the fishing business as equal shareholders. Wife worked in the parties' fishing business for most of the marriage. In 2002 Wife was diagnosed with breast cancer.

In spring 2004, Husband began an adulterous relationship with Pamela Buck. Unbeknownst to Wife, Husband sold an investment property the parties owned on Seabrook Island (Seabrook Property) netting approximately $437,000. Husband used a portion of the proceeds personally and transferred approximately $362,000 to Buck, who used the funds to aid in the purchase of a property in Florida (Florida Property). Buck subsequently transferred the Florida Property to PBR Holdings, LLC owned by Husband and Buck. A month after this action was filed in family court, PBR Holdings transferred the Florida Property back to Buck. Buck later sold the Florida Property for approximately $750,000.

In January 2004, Husband left the Kiawah Property to fish in the Gulf of Mexico region. A few months later, Wife moved

in with her parents in Florida to undergo medical treatment for cancer. During her treatment, Wife visited the Kiawah Property and discovered numerous items missing. Later, Wife learned Husband was having an affair with Buck. In March 2005, Wife initiated this action for divorce on grounds of adultery. After a trial, the family court issued a final decree of divorce declaring the parties divorced, awarding Wife alimony, and equitably dividing the parties' marital estate. This appeal followed.

## STANDARD OF REVIEW

In appeals from the family court, this court has the authority to find facts in accordance with its own view of the preponderance of the evidence. *Wooten v. Wooten,* 364 S.C. 532, 540, 615 S.E.2d 98, 102 (2005). Despite this broad scope of review, this court is not required to disregard the findings of the family court. *Id.* We are mindful that the family court, who saw and heard the witnesses, was in a better position to evaluate their credibility and assign comparative weight to their testimony. *Id.*

## LAW/ANALYSIS

### I. Valuation of Marital Property

Husband argues the family court erred in valuing several pieces of the parties' marital property. The family court has broad discretion in valuing marital property. *Roe v. Roe,* 311 S.C. 471, 478, 429 S.E.2d 830, 835 (Ct.App.1993). The family court's determination of the value of marital property will not be disturbed absent an abuse of discretion. *See id.*

#### A. Cost of Repairs to the Kiawah Property

Husband contends no evidence supports the family court's finding the cost of repairs to the Kiawah Island Property totaled $269,000. We disagree.

The family court issued a temporary order awarding Wife exclusive use and possession of the Kiawah Property and ordered Husband to pay the insurance on the property. However, in August or September 2005, Husband allowed the

insurance to lapse and when Wife subsequently visited the Kiawah Property, she discovered water damage. Wife testified an engineering report revealed the air conditioning system malfunctioned causing extensive water damage to the floors, walls, and ceiling. At trial, Wife estimated the cost of repairs at $221,000; however, her financial declaration listed an estimated repair cost of $269,000. According to Husband, he hired a contractor to repair the Kiawah Property for $8,000. The family court was free to accept Wife's valuation over Husband's, and its finding is within the range of the evidence presented. *See Pirri v. Pirri,* 369 S.C. 258, 264, 631 S.E.2d 279, 283 (Ct.App.2006) (finding the "family court may accept the valuation of one party over another, and the court's valuation of marital property will be affirmed if it is within the range of evidence presented"). Accordingly, we find the family court did not abuse its discretion in valuing the cost of repairs to the Kiawah Island property.

Additionally, Husband maintains the family court erred in making him solely responsible for the cost of repairs because the water damage was present when the insurance policy was in effect. Husband points to inconsistencies in Wife's testimony and concludes they indicate she discovered the water damage while the insurance was in effect and failed to file an insurance claim. Although Wife's testimony is vague on the issue of exactly when she discovered the damage in relation to when the insurance policy lapsed, she was consistent in her testimony that she did not file an insurance claim because no insurance was in effect. Because this is an issue of credibility, and the family court was in a better position than this court to judge the witness's credibility, we defer to the family court's findings. *See Avery v. Avery,* 370 S.C. 304, 315, 634 S.E.2d 668, 674 (Ct.App.2006) (deferring to the family court's equitable distribution when issue was one of witness credibility).

## B. Kiawah Property Equity

Husband argues the family court erred in determining the equity in the Kiawah Island property was $485,000. Husband contends the family court improperly reduced the amount of equity in the Kiawah Property by $400,000 to account for the mortgage Wife unilaterally secured on the

property and should have determined the amount of equity to be $735,000. We disagree.

Husband's argument misconstrues the family court's order. The family court valued the equity in the Kiawah Property at $885,000 based upon two appraisals. The family court then subtracted $400,000 from the equity to account for the loan Wife unilaterally secured on the property during litigation and awarded her $485,000 in credit towards the equitable apportionment. Husband did not receive any credit for the equity in the Kiawah Property. It appears the family court counterbalanced the Kiawah Property equity in Wife's favor with Husband's fishing vessel, the Bold Venture, valued at $450,000 in his favor. Further, the family court ordered that Wife assume sole responsibility for the mortgage. In sum, the family court reduced the amount of credit awarded to Wife for the equity in the Kiawah Property. This reduction was to Husband's benefit. We find no abuse of discretion in the family court's calculation of the equity in the Kiawah Property.

## C. Bold Venture

Husband argues the family court erred in valuing the fishing vessel Bold Venture at $450,000 when the overwhelming evidence presented at trial demonstrated its value was $100,000. At trial, Husband asserted the value of the Bold Venture was $100,000.[1] However, in a salvage action filed in the United States District Court for the District of South Carolina six months before Wife initiated this divorce action, Husband asserted the value of the Bold Venture was $450,000. Relying on *Hayne Federal Credit Union v. Bailey*, the family court found Husband was judicially estopped from asserting a value different than $450,000. 327 S.C. 242, 251, 489 S.E.2d 472, 477(1997) (adopting the doctrine of judicial estoppel as it relates to matters of fact). Husband has not appealed the family court's judicial estoppel ruling; therefore, it is law of the case. *In re Morrison*, 321 S.C. 370, 372 n. 2, 468 S.E.2d 651, 652 n. 2 (1996) (noting an unappealed ruling becomes law of the case and precludes further consideration of the issue on

---

1. The family court found Husband's testimony asserting the Bold Venture's value was $100,000 was not credible.

appeal). Accordingly, we are precluded from considering Husband's argument.

## II. Husband's Income

■ Husband argues the family court erred in determining his yearly income and should have imputed a $65,000 per year income to Wife. We disagree.

■ In domestic actions, this court reviews alimony awards and the family court's equitable apportionment of marital property for an abuse of discretion. *Dearybury v. Dearybury*, 351 S.C. 278, 282, 569 S.E.2d 367, 369 (2002) (finding the decision to grant or deny alimony rests within the sound discretion of the family court and will not be disturbed absent an abuse of discretion); *Greene v. Greene*, 351 S.C. 329, 340, 569 S.E.2d 393, 399 (Ct.App.2002) ("The apportionment of marital property will not be disturbed on appeal absent an abuse of discretion."). Pursuant to section 20–3–130(C)(6) of the South Carolina Code (Supp.2010), the family court must determine the current and reasonably anticipated earnings of both spouses in making an award of alimony. Likewise, in equitably apportioning the parties' marital property the family court must consider the income and earning potential of each spouse. S.C.Code Ann. § 20–3–620(B)(4) (Supp.2010).

Husband's financial declaration fails to expressly specify his income and merely states "See Tax Returns." Husbands 2006 individual tax return states a taxable income of $0.00. Husband's fishing business, Stone Bass Fisheries, LLC, reported a net profit of $61,667 for 2006. However, PBR Holdings, also owned by Husband, reported a net loss of $61,667 for 2006. In contrast, Husband's 2004 individual tax return states a taxable income of $323,096. In an affidavit filed in conjunction with the temporary hearing, Husband asserted he earns a gross income of approximately $250,000 per year. The only evidence of Wife's earning potential independent of the parties' fishing business was Husband's assertion Wife was earning between $70,000 and $80,000 per year at the time the parties married. Further, Wife has battled breast cancer throughout the course of this action, and although her cancer was in remission at the time of the final hearing, she faced several reconstructive surgeries shortly thereafter. Based on

the foregoing, we find evidence supports the family court's findings Husband has the ability to earn $350,000 per year, less the normal and ordinary expenses associated with the fishing business, and Wife's earning capacity was minimal due to her health issues. Accordingly, the family court did not abuse its discretion.

Husband also contends the family court's error in determining his yearly income tainted the family court's calculation of (1) his alimony obligation, (2) his support arrearage, (3) the attorney's fees owed Wife, and (4) the equitable apportionment. Essentially, Husband asserts because he earns only $65,000 per year, he cannot afford these obligations. In light of the disposition above, we do not consider these elements of Husband's arguments below. *See Arnal v. Arnal,* 363 S.C. 268, 288 n. 8, 609 S.E.2d 821, 831 n. 8 (Ct.App.2005) (noting this court need not consider remaining issues when disposition of prior issues is dispositive).

## A. Alimony

■ Husband alleges the family court erred in calculating his alimony obligation. Specifically, Husband points to several factors to which he would assign different weight than the family court. We disagree.

■ The decision to grant or deny alimony rests within the sound discretion of the family court and will not be disturbed absent an abuse of discretion. *Dearybury,* 351 S.C. at 282, 569 S.E.2d at 369. An abuse of discretion occurs when the family court's ruling is controlled by an error of law or based upon findings of fact that are without evidentiary support. *Id.*

■ Alimony is a substitute for the support normally incident to the marital relationship and should put the supported spouse in the same position, or as near as is practicable to the same position, enjoyed during the marriage. *Allen v. Allen,* 347 S.C. 177, 184, 554 S.E.2d 421, 424 (Ct.App.2001). If an award of alimony is warranted the family court has a duty to make an award that is fit, equitable, and just. *Id.* The family court may grant alimony in such amounts and for such a term as it considers appropriate under the circumstances. *Davis v. Davis,* 372 S.C. 64, 79, 641 S.E.2d 446, 454 (Ct.App.

2006). The family court must consider the following factors: (1) duration of the marriage, (2) the physical and emotional health of the parties, (3) educational background of the parties, (4) employment history and earning potential of the parties, (5) standard of living during the marriage, (6) current and reasonably anticipated earnings of the parties, (7) current and reasonably anticipated expenses of the parties, (8) marital and nonmarital property of the parties, (9) custody of the children, (10) marital misconduct or fault, (11) tax consequences, (12) prior support obligations, and (13) any other factors the family court considers relevant. S.C.Code Ann. § 20–3–130(C) (Supp.2010). However, "[t]he family court is only required to consider relevant factors." *King v. King,* 384 S.C. 134, 142, 681 S.E.2d 609, 613 (Ct.App.2009); *Epperly v. Epperly,* 312 S.C. 411, 415, 440 S.E.2d 884, 886 (1994) (remanding for consideration of all relevant factors in section 20–3–130(C)).

■ In reviewing an award of alimony, we do not reweigh the statutory factors; rather our review is limited to determining whether the family court abused its discretion. *See Bodkin v. Bodkin,* 388 S.C. 203, 217, 694 S.E.2d 230, 238 (Ct.App.2010). Here, the family court listed each factor it was required to consider pursuant to section 20–3–130(C) and made findings of fact supported by evidence in the record and conclusions of law regarding each factor. Accordingly, we find the family court did not abuse its discretion in awarding alimony or in determining the amount of alimony. *Id.* (finding the family court did not abuse its discretion in awarding alimony when it "made findings of fact on all of the relevant factors, and the record contain[ed] evidence to support each of those findings").

## B. Support Arrearage

■ Husband argues no evidence supports the family court's finding he owes a support arrearage of $79,799.77. A review of the record reveals evidence supports the family court's calculation. Wife provided an itemized summary of the arrearage with her financial declaration indicating Husband owed $507,737.13. The family court then subtracted various items that were accounted for in other parts of the final

divorce decree. Accordingly, we find Husband's argument is without merit.

### C. Attorney's Fees

Husband maintains the family court erred in ordering he pay a portion of Wife's attorney's fees. Specifically, Husband contends the family court erred in determining the attorney's fees of James McLaren and accounting fees of Kenton Thompson would not have been incurred but for Husband's fault in the breakdown of the marriage and his efforts to defeat Wife's interest in marital property. We disagree.

The award of attorney's fees in a domestic action rests within the sound discretion of the family court. *Stevenson v. Stevenson*, 295 S.C. 412, 415, 368 S.E.2d 901, 903 (1988). In deciding whether to award attorney's fees and costs, the family court should consider "(1) the party's ability to pay his/her own attorney's fee; (2) beneficial results obtained by the attorney; (3) the parties' respective financial conditions; [and] (4) effect of the attorney's fee on each party's standard of living." *E.D.M. v. T.A.M.*, 307 S.C. 471, 476–77, 415 S.E.2d 812, 816 (1992). After determining an award is appropriate, the family court should next consider the amount of attorney's fees and costs to award. *Farmer v. Farmer*, 388 S.C. 50, 57, 694 S.E.2d 47, 51 (Ct.App.2010). In determining a reasonable attorney's fee the family court should consider "(1) the nature, extent, and difficulty of the case; (2) the time necessarily devoted to the case; (3) professional standing of counsel; (4) contingency of compensation; (5) beneficial results obtained; [and] (6) customary legal fees for similar services." *Glasscock v. Glasscock*, 304 S.C. 158, 161, 403 S.E.2d 313, 315 (1991).

Here, the family court addressed the *E.D.M.* factors and determined an award of attorney's fees was appropriate. The family court also addressed the *Glasscock* factors in determining a reasonable attorney's fee. Because the family court properly considered the *E.D.M.* and *Glasscock* factors, we conclude the family court did not abuse its discretion in awarding Wife $125,551.48 in attorney's fees and $7,000 in accounting costs. *See Dickert v. Dickert*, 387 S.C. 1, 10–11, 691 S.E.2d 448, 453 (2010) (holding the family court did not

abuse its discretion in awarding attorney's fees when it properly considered the *E.D.M.* and *Glasscock* factors).

Furthermore, Husband's contention the family court improperly considered his fault in causing the divorce when awarding attorney's fees and costs is without merit. *See, e.g., Doe v. Doe*, 370 S.C. 206, 219, 634 S.E.2d 51, 58 (Ct.App.2006) ("A party's fault in causing a divorce . . . is not a factor to be considered when awarding attorney's fees."). In fact, the family court found the time necessarily devoted to the case was substantial and the fees and costs would not have been incurred but for Husband's fault in the breakdown of the marriage and his subsequent efforts to defeat Wife's interest in marital property. The family court specifically noted Wife's counsel and accountant went to great lengths to trace the proceeds from Husband's surreptitious sale of the Seabrook Property. This is in contrast to the family court's erroneous finding in *Doe* that husband should be awarded attorney's fees primarily because wife's adultery caused the divorce. *Id.* Accordingly, Husband's argument is without merit. We find no abuse of discretion in the family court's award of attorney's fees and accounting costs.

### D. Amount of Wife's Equitable Distribution

Husband contends the family court erred in ordering he pay Wife in excess of $500,000 in equitable distribution because his yearly income is only $65,000 and he does not have the ability to pay $500,000. We disagree.

"The apportionment of marital property will not be disturbed on appeal absent an abuse of discretion." *Greene v. Greene*, 351 S.C. 329, 340, 569 S.E.2d 393, 399 (Ct.App. 2002). Section 20–3–620(B) of the South Carolina Code (Supp. 2010) lists fifteen factors the family court must consider in making an equitable apportionment and grants the court the discretion to determine the weight to assign to each of the factors. *Id.* "On appeal, this court looks to the overall fairness of the apportionment and it is irrelevant that this court might have weighed specific factors differently than the family court." *Id.* Here, the family court expressly considered the relevant factors pursuant to section 20–3–620(B). Furthermore, a review of the record reveals the overall equi-

table apportionment was fair and reasonable especially considering Husband's misconduct in attempting to defeat Wife's interest in the Florida Property and the disparity between the parties' earning potentials. Accordingly, we find the family court did not abuse its discretion in equitably apportioning the parties' marital property.

## CONCLUSION

For the foregoing reasons, the decision of the family court is **AFFIRMED.**

HUFF and KONDUROS, JJ., concur.